UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILMA HEADEN,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:10-cv-648

Beckwith, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Wilma Headen filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes. As explained below, I conclude that the finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

    **I. Summary of Administrative Record**

Plaintiff filed applications for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on November 21, 2007, alleging a disability based upon mental impairments of depression, anxiety, obsessive compulsive disorder, bipolar disorder, and borderline personality disorder. Plaintiff's applications were denied initially and upon reconsideration, and she timely requested an evidentiary hearing. On November 17, 2009, following an administrative hearing held on October 7, 2009 at

1

which Plaintiff appeared with counsel, Administrative Law Judge ("ALJ") Christopher B. McNeil issued a decision concluding that Plaintiff was not disabled, because she retained the residual functional capacity ("RFC") to perform her past relevant work. Plaintiff was 36 years old at the time of that decision.  The Appeals Council denied review; therefore, the ALJ's decision remains as the final decision of the Commissioner. Plaintiff filed the instant complaint on September 20, 2010 in order to challenge the ALJ's decision.

In specific "Findings" representing the rationale of his decision, the ALJ determined that Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2010" and that she has the following severe impairments: "anxiety, obsessive compulsive disorder, bipolar disorder, borderline personality disorder and depression." (Doc. 6-2 at 11).  However, the ALJ determined that none of the impairments or combination thereof met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability.  (*Id.* at 12).  Rather, the ALJ determined that Plaintiff retained the following residual functional capacity to perform a full range of work at all exertional levels, subject to the following non-exertional limitations:

> The claimant is capable of understanding, remembering, and carrying out only short instructions and the job must have no more than routine responsibilities.  The position must be performed sufficiently far enough away from supervisors, co-workers and the general public as to reduce distractions.  The job cannot require intense attention by the employee and it cannot involve assembly-line work.

(Doc. 6-2 at 12).  The ALJ determined that Plaintiff could perform a portion of her past relevant work, namely, the position of bakery cleaner. (*Id.* at 15).

2

In her statement of errors, Plaintiff argues that the ALJ erred when he: 1) disregarded the opinions of her treating physician; 2) arbitrarily focused on facts in support of a non-disability finding rather than reviewing the record as a whole; 3) improperly focused on only one portion of the vocational expert's testimony; and 4) failed to consider the impact of Plaintiff's mental illness on her ability to perform her past position.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for DIB or SSI benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

3

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve

4

months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

Plaintiff's counsel conceded at her evidentiary hearing that Plaintiff's mental impairments do not meet or equal a listed impairment. (Doc. 6-2 at 55). Although Plaintiff does not argue that she meets a listed impairment at this stage, she argues that the ALJ nevertheless erred in concluding that she was not disabled.

**B. Specific Errors**

**1. The ALJ's Alleged Disregard of Treating Physician's Opinion**

Plaintiff's first assignment of error alleges that the ALJ erred by failing to give controlling weight to the opinions of her treating psychiatrist, Dr. Thor Tangvald. 20 C.F.R. § 404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques* and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.* (emphasis added).

Plaintiff treated with Dr. Tangvald from May 2008 (two months after being discharged from a psychiatric hospital admission) until February 2009. Approximately six months later, Plaintiff resumed treatment with a new therapist at NorthKey Community Care.

Although Plaintiff is critical of the ALJ's alleged failure to sufficiently consider the opinions of Dr. Tangvald, much of her argument focuses on symptoms recorded not by Dr. Tangvald, but instead during a three-day psychiatric hospital stay in March of 2008. At the hospital, Plaintiff admitted to using "crack on weed" in January of 2008, and to

5

having failed to take her medications for the two or three months prior to her admission. (Doc. 6-7 at 112-120). A urine test was positive for cocaine. (*Id.*). At her evidentiary hearing before the ALJ, Plaintiff explained the positive cocaine test by recounting that she had been working as an illicit drug trafficker, carrying drugs in her mouth. (Doc. 6-2 at 46). In any event, hospital doctors restarted her medications, and her Global Assessment of Functioning, which had been assessed at about 30 upon admission, improved to about 60 at the time of her discharge from the hospital (Doc. 6-7 at 112, 117).

Two months later in May of 2008, Plaintiff began treating with Dr. Tangvald. She continued to meet with either Dr. Tangvald or a therapist under his supervision at least once per month through February 2009 (Doc. 6-7 at 125, 140-164).[1] Shortly after beginning treatment under Dr. Tangvald, Plaintiff reported that she was engaging in "less 'picking + digging'" after her Xanax dosage was increased, and that "[m]edicine seems to be working - not crying as much no more." (*Id.* at 158). In July 2008, Plaintiff's therapist similarly noted that Plaintiff was "picking and digging" less often, and Dr. Tangvald also described her as "better." (*Id.* at 156-157). However, in October 2008, Dr. Tangvald noted that Plaintiff had resumed her "digging," and characterized her condition as "worse." (*Id*. at 149). Four months later, on February 17, 2009, Plaintiff's mental status was noted to be "alert," "euthymic," "oriented," and with "normal thought content." (*Id.* at 143). Plaintiff reported to her new therapist on August 10, 2009 that counseling she had previously received through Dr. Tangvald's office had

---

[1] The narrative portion of notes from Dr. Tangvald's office are all hand-written and often difficult to decipher. It is apparent that in addition to Dr. Tangvald, Plaintiff was seen by another therapist under his supervision, but the name of that therapist is illegible.

6

been "going okay." (*Id.* at 179). Most of the treatment notes from Dr. Tangvald's office consist of check marks and arrows and indicate Plaintiff's subjective reports as to whether her condition was better or worse. Although a few contain arrows indicating a decrease in activities of daily living, there is no explanation as to what activities were affected, and no remarks or opinions at all concerning Plaintiff's work-related functional limitations. (*See e.g.,* Doc. 6-7 at 163).

Plaintiff complains that the ALJ "chose to largely ignore" Dr. Tangvald's records, and failed to give "good reasons" for disregarding his opinions. The ALJ referenced Dr. Tangvald when he determined Plaintiff's residual functional capacity, but noted only: "The treatment records of Dr. Tangvald routinely note that Plaintiff's condition is unchanged or stable." (Doc. 6-2 at 14). Plaintiff concedes the accuracy of that description, but argues that it is taken out of context and ignores other clinical notes by Dr. Tangvald or his office that reference numerous psychological symptoms. In context, Plaintiff argues that Dr. Tangvald's records contain "objective medical observations" of Plaintiff's severe mental illness.

The ALJ's failure to provide a more detailed summary of the treatment notes from Dr. Tangvald's office does not mean that the ALJ disregarded his records. On the contrary, there is no evidence that the ALJ failed to consider the treating psychiatrist's clinical records as a whole. Plaintiff points to no *specific* note, diagnosis, or opinion of Dr. Tangvald that would suggest greater functional limitations, or that the ALJ failed to discuss.

To the extent that Plaintiff contends that the ALJ failed to accord controlling weight to Dr. Tangvald's opinions, Plaintiff's argument misses the mark because Dr.

7

Tangvald's records contain no such opinions. Only *opinions* of treating physicians are entitled to controlling weight. "Medical opinions are statements from physicians and psychologists...that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Mere "observations, without more, are not the type of information from a treating physician which will be provided great weight," as medical opinions require "assertions involving judgments about a patient's 'symptoms, diagnosis and prognosis.'" *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007)(citing 20 C.F.R. I404.1513(b), 404.1527(a)(2)). In this case, the record contains only clinical notes that reflect ongoing "observations" from Dr. Tangvald's office. Dr. Tangvald never opines that Plaintiff is disabled, or unable to gain or maintain employment. Moreover, his clinical notes simply do not contain any opinions at all relevant to Plaintiff's functional limitations, and therefore are not evidence of limitations ignored by the ALJ.

There is no doubt that Dr. Tangvald's clinical notes lend credence to the fact that Plaintiff suffers from diagnosable mental illnesses. In fact, the ALJ specifically found that Plaintiff suffers from five different mental illnesses as "severe" impairments. (Doc. 6-2 at 11). However, a diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual. *See Young v. Secretary of Health and Human Services*, 925 F.2d 146, 151 (6th Cir. 1990).

### 2. The ALJ's Alleged Focus on Facts in Support of a Non-disability Finding

In her second assignment of error, Plaintiff argues that the ALJ erred by ignoring

8

"important pieces of evidence in the record that did not support his RFC." (Doc. 8 at 7). Of course, ultimately the determination of a claimant's residual functional capacity is "reserved to the Commissioner." 20 C.F.R. §404.1527(e)(2). Plaintiff complains that in this case, the ALJ failed to explain his analysis of the evidence "in such a manner to allow for a reviewing court to determine whether the ultimate decision...is rational and supported by substantial evidence." (Doc. 8 at 8). Specifically, Plaintiff asserts that the ALJ failed to give specific reasons for "ignoring" Dr. Tangvald's clinical records. Plaintiff is mistaken. As discussed above, Dr. Tangvald offered no opinions whatsoever concerning Plaintiff's functional limitations.

Unlike Dr. Tangvald, several consulting physicians and psychologists did provide opinions concerning Plaintiff's limitations. In addition to discussing those opinions in assessing Plaintiff's RFC, the ALJ considered evidence "that the claimant takes care of her daughter, cooks, does the laundry and goes shopping." (Doc. 6-2 at 12; *see also id.* at 12-15 (discussion of consulting opinions)). Based upon Plaintiff's impairments and evidence in the record as a whole, the ALJ assessed Plaintiff as having "moderate difficulties" in her abilities "to maintain concentration, persistence or pace." (Doc. 6-2 at 13).

The ALJ adequately articulated the manner in which he determined Plaintiff's RFC. He explained that he particularly relied upon the opinions of Dr. Jennifer Sparks, a consulting psychologist who examined Plaintiff on December 20, 2007. (*See* Doc. 6-7 at 89-97). Plaintiff reported to Dr. Sparks that although she had experienced depressive symptoms "for years," she had been "symptom free more often than not for two consecutive months in the last two years." (Doc. 6-7 at 91). The ALJ found the

9

opinions of Dr. Sparks to be "consistent with the claimant's statements that she is irritable in her interactions with others, gets mad easily and has difficulty finishing tasks, with the claimant's mother's statement that the claimant has difficulty remembering and paying attention."  (Doc. 6-2 at 13).

Even though Dr. Sparks assessed Plaintiff as having no impairment in her ability to understand, remember and follow instructions, the ALJ determined that Plaintiff was somewhat limited in that ability based upon additional evidence in the record, including Dr. Tangvald's subsequent records and Plaintiff's own testimony.  Thus, the ALJ determined that Plaintiff can understand, remember and carry out only "short" instructions, and that any job "must have no more than routine responsibilities."  (*Id.*). Considering Plaintiff's difficulties with social interactions, the ALJ additionally determined that Plaintiff can perform a job only if it is performed "sufficiently far enough away from supervisors, co-workers and the general public as to reduce distractions," and does not require "intense attention by the employee" or "assembly-line work."  (*Id.*).

Contrary to Plaintiff's argument, I find no evidence that the ALJ ignored any salient evidence in ascertaining Plaintiff's residual functional capacity.  Rather, the determination of Plaintiff's RFC is supported by substantial evidence in the record as a whole.

### 3. The Vocational Expert's Testimony and Plaintiff's Credibility

In her third assignment of error, Plaintiff charges that the ALJ erred by supplying the vocational expert ("VE") with an incomplete hypothetical.  The Plaintiff particularly faults the ALJ with failing to instruct the VE to credit *all* of Plaintiff's testimony, which Plaintiff contends supported additional limitations than those referenced in the

hypothetical.  Plaintiff argues that the VE testified if all of Plaintiff's testimony had been accepted as true, then "there would not be jobs available in significant numbers for Plaintiff to work."  (Doc. 8 at 10).

At the hearing, Plaintiff testified that her psychological impairments, particularly her tendency to become angry with others, preclude her from sustaining or maintaining employment over a long period.  She testified that the longest that she has been employed is 8 months, and frequently feels compelled to mutilate herself by "picking."  Plaintiff argues that the ALJ should have more specifically discussed this part of her testimony prior to determining her functional limitations.  Instead, the ALJ more generally explained that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with" the RFC that he described.  (Doc. 6-2 at 14).  Essentially, Plaintiff attacks the ALJ's determination that Plaintiff was not fully credible.

In addition to referencing her own testimony, Plaintiff points generally to the records of Dr. Tangvald for limitations in excess of those described to the VE by the ALJ.  However, as previously discussed, Dr. Tangvald's records contain no opinions that pertain to additional functional limitations.

Plaintiff also criticizes the ALJ's reliance upon the opinion of Dr. Sparks "over that of Dr. Tangvald."  (Doc. 8 at 10).  This critique also goes to the issue of credibility, in that Dr. Sparks opined that Plaintiff was "histrionic in presentation" and "sometimes appeared to be magnifying her symptoms."  (Doc. 6-7 at 94).  Dr. Sparks further offered that Plaintiff "appears able to relate appropriately when she chose to do so and maintains relationships in her life.  (*Id.* at 95).  Plaintiff points to her March 2008

11

hospitalization as evidence that she was not magnifying her symptoms. However, that hospitalization occurred at a time when Plaintiff had discontinued her psychiatric medications and had recently used illicit drugs.

In support of his credibility assessment, the ALJ noted that Plaintiff's activities of daily living were inconsistent with her testimony. Despite testimony that her symptoms were disabling, Plaintiff also reported that she is capable of cooking, doing laundry, shopping, managing money, bathing and getting her daughter off to school in the morning. (Doc. 6-2 at 15). Similarly, Plaintiff's mother stated that Plaintiff can take care of her daughter, cook complete meals with several courses, wash clothes, shop in stores, and manage finances. (*Id.*). She reported that Plaintiff spends time visiting and talking on the phone with others, and that her social activities have not changed since the onset of her mental illness. (*Id.*). Plaintiff's mother opined that Plaintiff could follow both written and spoken instructions and get along with authority figures. (*Id.*). Plaintiff's pre-hearing statements, contrary to her more dramatic hearing testimony, also provided evidence in support of the ALJ's conclusion that Plaintiff "is capable of taking care of her daughter, cooking when she feels like it, eating meals out when she does not feel like cooking, washing dishes, sweeping, mopping, and shopping." (*Id.*). Last, the ALJ's determination on credibility was supported by the inconsistencies between the objective evidence (including the opinions of Dr. Sparks and other consultants) and Plaintiff's testimony.

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475. However, "an ALJ is not required to

12

accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392. Given the great deference to an ALJ's credibility assessment, it is clear that substantial evidence supports the ALJ's decision.

This Court's conclusion that the ALJ's credibility assessment is supported by the record leads to the additional conclusion that the hypothetical posed to the VE was not improper. The limitations described to the VE accurately included all limitations supported by the record as a whole. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)(holding that an ALJ is required to incorporate only those limitations accepted as credible). The VE testified that, based upon the RFC set forth by the ALJ, a significant number of jobs existed in the national economy that Plaintiff could perform. The VE specifically testified that "none of the limitations" posited by Plaintiff's counsel "would be relevant by nature on vocational issues other than sustainability." (Doc. 6-2 at 62).

The VE discounted the additional "limitation" suggested by Plaintiff's counsel with respect to the issue of sustainability in particular. As the VE explained, counsel's statement that Plaintiff "couldn't complete a 40 hour workweek" was not so much a hypothetical limitation as simply a conclusion that "by nature would probably imply that she would be unemployable." (Doc. 6-2 at 62). However, the VE also explained that other limitations referenced by counsel had been present throughout Plaintiff's prior work history such that by themselves, none would preclude Plaintiff from working. (*Id.* at 62-63). In short, the hypothetical posed to the VE properly included all limitations supported by the record, and Plaintiff has demonstrated no error in the ALJ's failure to include additional limitations.

### 4. The Full Impact of Plaintiff's Mental Illness

Plaintiff's fourth assignment of error closely relates to her third listed error, to the extent that it also pertains to the issue of sustainability. Citing two Fifth Circuit cases (but no Sixth Circuit case law), Plaintiff argues that the ALJ failed to consider the overall impact of Plaintiff's mental impairments upon her ability to sustain work. *See, e.g., Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986). Plaintiff argues that the intransigence of her mental illness over time causes significant impairment in her long-term ability to hold a job. At the hearing, Plaintiff's counsel specifically focused on Plaintiff's "impulsiveness, irritability, those types of character issues" as presenting "problems in the workplace." (Doc. 6-2 at 64). Plaintiff points out that even Dr. Sparks stated that Plaintiff's symptoms reflect that her impulse control "deviate[s] markedly from the norm." (Doc. 6-7 at 92). The VE agreed that such "characteristics" can present

14

difficulties, but he also testified that those characteristics appeared to have been considered in the ALJ's hypothetical. (Doc. 6-2 at 64-65).

In Plaintiff's statement of errors, she highlights her symptoms when they were at their worst, during her March 2008 hospitalization. Although no one questions the severity of Plaintiff's illness during the three days that she was hospitalized in March of 2008, drug use and a lack of medication were two factors that may have contributed to that relatively brief and isolated severe period of illness. Once Plaintiff resumed her medications, her acute illness was brought under significant control and she was released from the hospital. There is no evidence of any prior or subsequent hospitalizations.

Plaintiff also emphasizes her persistent self-mutilating behaviors. Again, no one questions the chronic nature of Plaintiff's mental illness. The ALJ appropriately recognized Plaintiff's obsessive compulsive disorder as a severe impairment. (Doc. 6-2 at 11-12). However, there is no evidence that her self-mutilating behaviors have ever been done publicly or in any way impaired her ability to function in the workplace; no treatment provider has described Plaintiff's self-mutilating behaviors as so limiting. In fact, Plaintiff's own records suggest that her self-mutilating behaviors were not constant; in 2006, only one record includes reference to that behavior. (Doc. 6-7 at 2).

In conclusion, there is no evidence to support Plaintiff's contention that the ALJ failed to consider her long-standing problems and their effect on her ability to maintain or sustain employment. It is true that when questioned by counsel, the VE testified that if Plaintiff were to miss three or four days of work per month due to her symptoms, she would eventually lose any unskilled job and be unable to sustain employment.

However, no treatment provider opined that Plaintiff would miss three or four days per month. Although one of Plaintiff's diagnoses is a personality disorder, the VE testified that her mental impairments were present during her work history and did not appear to have hindered her employment.[2] Multiple cases in the Sixth Circuit have affirmed non-disability findings even where a would-be claimant suffers from a personality disorder or other chronic mental illness. *See e.g., Ledford v. Astrue*, 311 Fed. Appx. 746, 2008 WL 5351015 (6th Cir. 2008); *Thomas v. Comm'r of Social Security*, 230 F.3d 1360, 2000 WL 1529840 (6th Cir. 2000)(Table); *Cowgill v. Astrue*, 2011 WL 2600645 (N.D. Ohio June 30, 2011). Thus, there is no evidence that the ALJ did not fully consider all of Plaintiff's mental impairments, to the extent that they were supported by the record.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

    /s Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

---

[2] Plaintiff's mother testified that Plaintiff left one position due to a work environment that was hostile, where employees "talked down to" and "cursed at" her daughter. She explained that "anyone in their right mind, wouldn't stand for that, or like it." (Doc. 6-6 at 24).

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILMA HEADEN,  Case No. 1:10-cv-648

    Plaintiff,  Beckwith, J.
                                                           Bowman, M.J.
   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).